UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

FOR PUBLICATION

----------------------------------------------------------------x

In re:

Case No. 807-74458-reg

R.A. HENDRICKSON REAL ESTATE, INC.,

Chapter 11

                            Debtor.

----------------------------------------------------------------x

R.A. HENDRICKSON REAL ESTATE, INC.,

                           Plaintiff,

v.

Adv. Proc. No. 808-8034-reg

HARVEY WEISMAN d/b/a MICRO LEASING,
THE MORET PARTNERSHIP, SEA CLIFF
RESTAURANT, LLC d/b/a TUPELO HONEY
RESTAURANT, STEVEN J. RUDEN, D.D.S., P.C.,
and COUNTY TREASURER OF NASSAU
COUNTY, NEW YORK,

                           Defendants.

----------------------------------------------------------------x

## <u>MEMORANDUM DECISION</u>

Before the Court are cross-motions for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056. The Debtor, Plaintiff, seeks summary judgment against the Defendants, Harvey Weisman d/b/a Micro Leasing ("Weisman"), and The Moret Partnership ("Moret") on the first, second, third and sixth causes of action of the Adversary Proceeding Complaint, dated February 28, 2008 ("Complaint"). Weisman and Moret filed a cross-motion for summary judgment on those same causes of action.

In sum, the Debtor is asserting rights to certain real property and rents derived therefrom in which real property Weisman and Moret also claim an interest resulting from their purchase of certain tax liens from the Treasurer of Nassau County ("County Treasurer") and subsequent

issuance of tax deeds.  For the reasons that follow, the Court finds there are no genuine issues of material fact as they pertain to the Debtor's motion for summary judgment. On the merits of the Debtor's motion, the Court DENIES partial summary judgment in favor of the Debtor on the first, second, third and sixth causes of action of the Complaint.

On Weisman and Moret's cross-motion for summary judgment, the Court finds that there are genuine issues of material fact which preclude summary adjudication in their favor.

## I.  JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## II.  BACKGROUND

Prior to the issuance of tax deeds, the Debtor owned two parcels of real property at issue in this case: (1) 216 Sea Cliff Avenue, Sea Cliff, NY (the "216 Sea Cliff Property"), and (2) 208 Sea Cliff Avenue, Sea Cliff, NY (the "208 Sea Cliff Property").  The 216 Sea Cliff Property is occupied by one building which has two tenants: Sea Cliff Restaurant, LLC d/b/a Tupelo Honey ("Tupelo Honey"), and Steven J. Ruden, D.D.S., P.C. ("Dr. Ruden").  The 208 Sea Cliff Property is occupied by two buildings: one at 208 Sea Cliff Avenue and the other at 212 Sea Cliff Avenue.

### *The 208 Sea Cliff Property*

The 208 Sea Cliff Property is not at issue in this case, but the parties have cited extensively to rulings by the state court with respect to that property which will be discussed later in this Memorandum Opinion.

In 2001, Weisman purchased a tax lien with respect to the 208 Sea Cliff Property and was issued a Treasurer's Deed (#4737) on or about May 5, 2003.  In 2004, Weisman commenced an action in state court based on Treasurer's Deed #4737 seeking to extinguish the Debtor's interests in the 208 Sea Cliff Property.  *Harvey Weisman d/b/a Micro Leasing v. R.A. Hendrickson Real Estate, Inc., et al, Index No. 7357/04* (the "208 Sea Cliff Litigation").  On cross-motions for summary judgment, the state court issued a decision finding that Weisman's complaint was deficient in that it did not "contain an allegation that [Weisman] extends a right to redeem as required by §5-57.1(d) of the Nassau County Administrative Code" and granted Weisman leave to file an amended complaint.  The order further provided that in the event that Weisman failed to serve an amended complaint within thirty (30) days, the County Treasurer was directed to accept an amount necessary from the Debtor to effect a redemption of the property.  Weisman did not file an amended complaint within the thirty days and the Debtor was able to redeem the property by paying the outstanding taxes and other charges, and Treasurer's Deed #4737 was cancelled on February 16, 2006.

### *The 216 Sea Cliff Property*

In February 2001, the County Treasurer offered for sale tax liens on the 216 Sea Cliff Property which were purchased by Weisman.  During the next three years, Weisman filed one or more affidavit(s) with the County Treasurer pursuant to the Nassau County Administrative Code ("NCAC") asserting that he sent one or more notice(s) to the Debtor giving it the opportunity to redeem the tax lien on the 216 Sea Cliff Property.  The Debtor failed to redeem the property during that period.  Pursuant to the NCAC, Weisman applied to the County Treasurer for a tax deed and was issued Treasurer's Deed #4751 on July 8, 2003, which was recorded on June 6,

2005.

On February 18, 2003, the County Treasurer offered for sale tax liens for unpaid 2002 general taxes on the 216 Sea Cliff Property. These liens were purchased by William Edwards ("Edwards"). The County Treasurer issued Treasurer's Deed #4802 to Edwards on June 7, 2005, which deed was recorded on June 8, 2005. Shortly thereafter, Defendant, Moret, another entity owned by Weisman, acquired Treasurer's Deed #4802 from Edwards. Other than requesting that the Court fix, determine, and liquidate Moret's claim which is based on Deed #4802, Deed #4802 is not a pivotal issue and the record is silent as to steps taken by Moret in relation to Deed #4802.

On January 23, 2007, Weisman commenced a quitclaim action based on Treasurer's Deed #4751 against the Debtor in state court seeking to extinguish the Debtor's interests in the 216 Sea Cliff Property. *Harvey Weisman d/b/a Micro Leasing v. R.A. Hendrickson Real Estate, Inc., New York State Dept. of Taxation and Finance, Incorporated Village of Sea Cliff, Tupelo Honey, Jon Hendrickson, Index No. 07-001297.* The Debtor filed an answer and asserted, among other things, that Weisman failed to strictly adhere to the procedures of the NCAC, and that the Debtor was ready, willing and able to redeem the property. Weisman filed a motion for summary judgment, but that action was stayed when the Debtor filed a Chapter 11 bankruptcy petition on November 2, 2007.

### III. THE BANKRUPTCY PROCEEDINGS

The Debtor filed Chapter 11 with the stated intention of redeeming the 216 Sea Cliff Property from Weisman and using the rental arrearage and prospective regular monthly income

to fund a plan of reorganization.  *See* E.D.N.Y. LBR 1007-1 Affidavit of Jon Hendrickson, dated

November 8, 2007.  According to the Debtor, since 2003 the Debtor's tenants, Tupelo Honey

and Dr. Ruden, failed to make regular monthly rental payments to the Debtor as a result of the

uncertainty as to the Debtor's continued ownership of the 216 Sea Cliff Property.  This further

exacerbated the Debtor's cash flow issues and prevented it from having the funds necessary to

redeem the tax liens.

In March and April 2008, the Debtor entered into two stipulations with Weisman and

Moret which were both so-ordered by this Court.  Pursuant to the first stipulation, Dr. Ruden

agreed to deposit $99,000 in rental arrears which had accrued since 2003, plus ongoing rental

payments, into an escrow account to be held by the Debtor's counsel pending further order of the

Court resolving the Debtor's entitlement to those rents.  The second stipulation accomplished the

same result with respect to $149,500 in rental arrears owed by Tupelo Honey.  Weisman asserts

that it is entitled to the escrowed rents by virtue of its ownership interest in the property resulting

from Treasurer's Deed #4751 issued in 2003.  The Debtor's counsel continues to hold those rents

in escrow.

On February 28,2008, the Debtor filed the instant adversary proceeding against

Weisman, Moret, Tupelo Honey, Dr. Ruden and the County Treasurer seeking:

1.  a determination that the interests of Weisman and Moret in the 216 Sea
     Cliff Property constitute liens which the Debtor can redeem as if no
     treasurers deed had been issued;
2.  a declaratory judgment that as of the date of the bankruptcy filing the
     Debtor was the owner the 216 Sea Cliff Property with all rights of a fee
     owner, e.g., the right to operate the building located on the property, and
     enter into and enforce leases with tenants of the property;
3.  a declaratory judgment that the rental arrears and current rent are property
     of the estate pursuant to 11 U.S.C. § 541;
4.  a judgment for turnover to Debtor of rents due and owing by Dr. Ruden and

Tupelo Honey;

5.   to satisfy tax liens through confirmed plan of reorganization and upon
     such documented satisfaction, a judgment directing County Treasurer to
     issue a deed cancellation of Treasurers Deed #4751;

6.   an order fixing Moret's informal proof of claim asserting a secured claim
     against the 216 Sea Cliff Property so Debtor can determine the amount
     required to redeem the property;

7.   an order prohibiting Weisman, Micro and Moret from interfering with the
     Debtor's landlord relationship with the tenants;

8.   a judgment declaring that County Treasurer's auction sale of tax liens on
     February 2008 was a violation of the automatic stay; and

9.   costs and disbursements.

It is the Debtor's intention, if successful in this adversary proceeding, to use the escrowed

rental income to fund its redemption of the tax liens pursuant to a Chapter 11 plan of

reorganization.  The Debtor has represented that if it is unable to use the rental income towards

the tax lien redemption, it will not have the funds necessary to redeem.

On July 9, 2008, the Debtor filed a motion for partial summary judgment on the first,

second, third, and sixth claims for relief, above.  As such, the Debtor asks the Court to declare,

as a matter of law, that: (1) the interests of Weisman and Moret constitute liens on the 216 Sea

Cliff Property (first cause of action); (2) as of the petition date, the Debtor retained the right of

redemption with respect to both Weisman's and Moret's tax liens and is therefore the fee owner

with the rights to enter into leases with tenants, collect rent, and encumber property (second

cause of action); (3) the 216 Sea Cliff Property and the rents derived therefrom are property of

the estate (third cause of action); and (4) Moret's tax lien against the 216 Sea Cliff Property

should be fixed so that the Debtor can redeem that lien (sixth cause of action).

Weisman filed a cross-motion for summary judgment asking this Court to determine, as a

matter of law, that the 216 Sea Cliff Property, and the rents derived therefrom since 2003, are not

property of the Debtor's estate under 11 U.S.C. § 541. Weisman asserts that he is the owner of

the property based on Treasurer's Deed #4751 and as such the rents which have accrued since 2003 belong to him. Weisman concedes that the Debtor has the right to redeem the 216 Sea Cliff Property, but only in compliance with the Nassau County Administrative Code. Weisman alleges that in addition to his tax lien, he has paid approximately $210,000 in county and village taxes, and $27,000 for insurance, on the property. In total, Weisman alleges that the Debtor would have to pay him over $340,000 in order to redeem the property. The Debtor's counsel is currently holding $268,430.78 in the rental escrow and Weisman argues that the Debtor cannot be permitted to apply those funds towards redemption of the property.

## IV. DISCUSSION

**A.    Summary Judgment**

Summary Judgment is appropriate only if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "A fact is material when it might affect the outcome of the suit under governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could have returned a verdict for the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). In reviewing the record, the court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Id.* Although the burden of demonstrating that no material fact exists lies with the moving party, "unless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the moving party." *Id.*

For purposes of a ruling on the Debtor's motion for summary judgment, the Debtor has asked the Court to assume that Treasurer's Deed #4751 was validly issued to Weisman. The

Debtor asserts that the issue of whether it received proper notice pursuant to section 5-51.0 of the NCAC, and thus whether the tax deed was properly issued, is of no consequence to its rights of ownership. The Debtor contends that even if a valid tax deed is issued, the original owner is not divested of ownership rights because as a matter of law a tax deed does not convey ownership rights to the holder of the tax deed. Accordingly, the Debtor asserts that the Court does not need to consider whether or not the tax liens and deeds were properly issued by the County Treasurer to Weisman and Moret in order to determine that the Debtor is the owner of the 216 Sea Cliff Property, retains ownership rights in the property, and is therefore entitled to the rents accrued on the 216 Sea Cliff Property.

While the Debtor asserts that notice and thus validity of the tax deed is not an issue for purposes of determining that it has ownership rights in the 216 Sea Cliff Property, it challenges Weisman's cross-motion for summary judgment based on proper notice and that the deed is valid. Weisman asserts that because he is a holder of a tax deed, he is the owner of the 216 Sea Cliff Property and the rents accrued thereon belong to him, despite the Debtor's redemption rights. Weisman's position, however, is predicated on the tax deed having been validly issued. The Debtor asserts, therefore, that the Court cannot affirmatively find in favor of Weisman because the Debtor disputes that it received proper notices of redemption which were the predicate for the issuance of Treasurer's Deed #4751.

The Court recognizes that the Debtor has made competing assertions, contending on the one hand that the Court does not need to consider the issue of notice for purposes of determining summary judgment in favor of the Debtor, and yet arguing on the other hand that the Court must consider whether notice was proper before it can grant a judgment to Weisman. While title

cannot be determined as an affirmative claim in the context of a summary proceeding, a question of title can be raised as a defense. *See Muzio v. Rogers*, 2008 N.Y. Slip Op. 51763 (App. Term Aug. 19, 2008). In ruling on the Debtor's motion for summary judgment, the Court is not determining the question of title to the 216 Sea Cliff Property. Instead, the question the Court is determining is who is entitled to rent accrued on the property and whether the rents accrued flow to the holder of a tax deed or remain with the original owner. The County Treasurer issued a tax deed on the 216 Sea Cliff Property and the Debtor does not dispute that it is held by Weisman. The Court is not determining, however, that Treasurer's Deed # 4751 is not subject to a challenge and its determination is without prejudice to any remedy the Debtor may have to challenge the deed.

Given the Debtor's assumption that there is no issue of notice in determining the Debtor's rights, the legal issues as presented by the Debtor on its motion for summary judgment are whether, by virtue of a validly issued Treasurer's Deed: (1) Weisman holds a lien against the 216 Sea Cliff Property which the Debtor can redeem as if no treasurer's deed had been issued; (2) as of the date of the bankruptcy filing, the Debtor was the owner the 216 Sea Cliff Property with all rights of a fee owner; and (3) the rental arrears and current rent are property of the estate pursuant to 11 U.S.C. § 541. As to Treasurer's Deed #4802, the Debtor seeks a ruling, as a matter of law, that this Court should fix the amount of Moret's tax lien claims against the Debtor so that the Debtor may redeem that deed pursuant to a Chapter 11 plan of reorganization.

As explained above, the Court finds that the issue of whether the Treasurer's Deed #4751 was properly issued is a material fact which is in dispute with respect to Weisman's cross-motion. As a result, Weisman's cross-motion is not ripe for summary adjudication.

The remainder of this Memorandum Decision will address the legal issues presented by the Debtor's motion for summary judgment based upon the undisputed facts.

**B.    Nassau County Administrative Code, Chapter V**

In Nassau County, unpaid local school district, special district, town and county taxes, together with any penalties, interest and other charges, become liens on the real property against which they are assessed.  NCAC, §§ 5-15.0, 5-16.0, 5-24.0(4).  The tax lien includes not only the lien, but also the right to repayment of the taxes, penalties, interest and other charges.  § 5-24.0(4).  One of the ways the County funds the collection of delinquent taxes is to sell tax liens to third party purchasers.[1]  § 5-39.0.  Once a tax lien purchaser pays the full amount of the tax lien, the County Treasurer issues a "certificate of sale" which reflects that the tax lien has been transferred to the purchaser ("lienholder"). §§ 5-41.0, 5-24.0(6).  At any time after twenty-one months from the date of the tax lien sale, the lienholder can give notice to redeem to the record owner.[2]  § 5-51.0.  The notice informs the recipient that unless he redeems the lien, the lienholder may apply for a deed of conveyance ("Treasurer's Deed") in three months from the date of the notice.  § 5-51.0.  If the tax lien is not satisfied within three months of the notice to redeem, the lienholder may either commence a foreclosure proceeding to obtain title,[3] or apply to

---

[1]    "If the owner, mortgagee, occupant of or any other party with an interest in such real estate does not pay the total amount of such unpaid taxes within the period stated in [an advertised notice of sale], then without further notice, on the day set for the sale, the County Treasurer shall commence the sale of the manner set forth in the advertisement referred to in section 5-37.0 of the code, and shall continue the sale from day to day until the tax lien on every such lot or parcel is sold." §5-39.0(a).

[2]    The notice must be given to: occupant, owner, trustee, mortgagee, judgment creditor, purchaser of any other tax liens, heirs, legal representatives, assigns, guardians of infants, and any other person having an interest on record. § 5-51.0(a).

[3]    Instead of applying for the deed, the lienholder can seek to foreclose on the lien once two years have passed from the date of the lien sale. § 5-60.0. The owner can satisfy the tax lien at any time

the County Treasurer for a deed of conveyance. § 5-53.0.  If the lienholder elects the deed, upon receipt of the notice to redeem and proof of service, the County Treasurer can execute a conveyance of real estate.  § 5-53.0.

With respect to the tax lien sale process, the New York Court of Appeals has explained that "[t]he purpose of the prescribed statutory process for assessment, sale and redemption is to compel payment of taxes overdue and, in default of such payment, to transfer the title of real estate from the owner thereof to another without the owner's consent." *Helterline v. People*, 295 N.Y. 245, 251 (1946); *see Arbor Secured Funding, Inc. v. Just Assets NY* 1, 2006 NY Slip Op 50112U (Sup. Ct. Nassau County Jan. 1, 2006).  "Thus the owner's title may not be divested unless statutory requirements are strictly observed."  *Arbor Secured Funding, Inc. v. Just Assets NY 1,* 2006 NY Slip Op 50112U; *see McCann v. Scaduto*, 71 N.Y.2d 164 (1987) ("All formal requirements governing tax sale proceedings must be scrupulously satisfied since a tax lien sale has 'momentous consequences' and results in divestiture of title.").

In addition to providing proof of service of the notice, the lienholder must also surrender the lien and pay all outstanding taxes to the County Treasurer before the conveyance is executed. §§ 5-53.0(2), 5-53.0(3).  The conveyance vests in the grantee an absolute estate in fee.  § 5-53.0. When the conveyance is executed, it is presumptive evidence of the regularity of all prior proceedings.  § 5-54.0(b).  After six years this presumption hardens and becomes irrebuttable.  § 5-54.0.  If the lienholder does not apply for a deed of conveyance within fifteen years of the purchase of the tax lien, the tax lien and all of the rights of the lienholder cease.  § 5-51.0(h).

---

before the sale occurs in an action to foreclose on the tax lien. § 5-50.0.  Upon the issuance of a judgment, the conveyance vests the purchaser with all right, title, and interest. § 5-64.0.

If the lienholder elected to take a Treasurer's Deed, he may thereafter commence an action to compel the determination of a claim any person might make to any interest in the property (a "Code Action").  § 5-57.1(a).  A Code Action is not the only way, however, for a tax lien purchaser to quiet title.  *See Swindler v. Knocklong Corp*., 114 N.E.2d 25 (N.Y. 1953) (NCAC does not limit a tax deed grantee to a Code Action, such an action is permissive.). Alternatively, the holder of a Treasurer's Deed can bring an action to determine a claim to real property pursuant to Article 15 of Real Property Actions and Proceedings Law (RPAPL). *See id*.; *Long Island Land Research Bureau v. Hempstead*, 203 Misc. 619 (N.Y. Sup. Ct. 1952) (Both Article 15 of RPAPL and § 5-57.1 of the NCAC provide procedures for the relief, each provision of law uses the words "may maintain" in the language authorizing the institution of this form of remedial litigation.).   If the holder of a Treasurer's Deed brings a Code Action, he must plead that he extends the right to the owner to set aside the deed by satisfying the tax lien. §5-57.1(d).[4] Some courts have held that even if the holder of a Treasurer's Deed brings an action pursuant to Article 15 of RPAPL, as opposed to a Code Action, the complaint must still plead that the owner has a right to redeem. *Weisman v. R.A. Hendrickson Real Estate Inc*., Index No. 7353/04; *Weinstein v. All State Credit Corp*., 34 Ad.2d 970 (N.Y. App. Div. 1970) (dissent). *Cf Connolly*

---

[4]      "... [A]ny defendant shall have the right, and the plaintiff must in such action specially plead that he extends such right to such defendant to set aside the deed of the County Treasurer and to satisfy the tax lien on which such deed was based by making a satisfaction pursuant to the terms of section 5-50.0 of the code as if no deed had been issued. In addition, such defendant shall pay to the plaintiff such actual disbursements as in the judgment of the court shall be fairly attributable to such lots or parcels, the tax lien on which has been thus satisfied.  Such right of satisfaction shall terminate and cease upon the granting of final judgment.  If the satisfaction be made by a municipal corporation, it may at its option, obtain an assignment of the plaintiff's title, and continue the action in its own name, as plaintiff.  If the plaintiff so desires, the final judgment may be recorded as a deed in the office of the County Clerk upon the payment of the recording fees.  The County Clerk shall index the same as if the defendant were grantor and the plaintiff grantee." §5-57.1(d).

*v. Denton*, 184 Misc. 761 (N.Y. Sup. Ct. 1945) (There is no basis for theory that plaintiff must,

even in an action brought under article 15 of the Real Property Law, comply with the provisions

of section 5-57.1 of the NCAC by extending to the defendant a right of redemption from the tax

sale as provided therein.); *Long Island Land Research Bureau v. Hempstead*, 203 Misc. 619

(N.Y. Sup. Ct. 1952).

## C.    Analysis

### 1.    Whether the Issuance of the Tax Deed Conveys Ownership Rights to Weisman OR Whether Debtor Retains all Rights of Ownership of 216 Sea Cliff Property and Weisman Merely Holds a Lien Against the 216 Sea Cliff Property

The Debtor contends that a Treasurer's Deed does not convey fee title to real property

and that the interests of Weisman and Moret are merely liens against the 216 Sea Cliff Property.

The Debtor's position assumes that the Treasurer's Deed was validly issued and does not rely on

the ability to invalidate the Treasurer's Deed based upon improper notice.  Instead, the Debtor

has asked this Court to start its analysis assuming that the Treasurer's Deed was properly issued.

Weisman disputes the Debtor's argument that he is only a lienholder, and argues that he

has fee title to the 216 Sea Cliff Property.  Weisman argues that the issuance of a Treasurer's

Deed results in divestiture of title to property from the original owner and that the Debtor's

redemption of the lien upon which Treasurer's Deed #4751 was issued does not restore the

Debtor's ownership rights *nunc pro tunc* to the date the deed was issued.  This is the issue as

presented to the Court.

Section 5-53.0 of the NCAC, "Conveyance by the County when tax lien is not satisfied,"

provides, in relevant part, that conveyance vests in the grantee an "absolute estate in fee."  § 5-

53.0.  Further, section 5-52.0 provides that the holder of the tax lien may obtain actual

possession of the premises after *title to such premises has been conveyed to him* pursuant to this article. § 5-53.0 (emphasis added).  In addition, section 5-57.1 is entitled "[A]ction to establish the regularity of a tax sale and the *title to real estate resulting therefrom*." § 5-53.0 (emphasis added).

There is a dearth of case law in this Circuit determining the extent of the rights of the involved parties once a Treasurer's Deed is issued.  However, in several written decisions determining whether due process was satisfied in tax lien processes, courts have consistently placed great emphasis on the terminating effect of a deed, i.e., that the statutory procedure of tax liens and deeds ultimately culminates in divestiture of title.  "On the date of conveyance, all private liens or encumbrances are extinguished and the purchaser of property at a tax sale, upon receiving a valid deed, acquires a new and complete title to the land under an independent grant from the sovereign, a title free of any prior claims to the property or interests in it and not merely the title of the prior owner of the party assessed for taxes."  *JKSP Restaurant Inc. v. County of Nassau*, 127 A.D.2d 121, 129 (N.Y. App. Div. 1987); *see In re Mojac Constr. Corp.*, 190 F. Supp. 622 (E.D.N.Y. 1960) ("The holder of the certificate can take a conveyance of title which results in a new title distinct from the title of the defaulting taxpayer); *McCann v. Scaduto*, 71 N.Y.2d 164 (1987) (All formal requirements governing tax sale proceedings must be scrupulously satisfied since they have 'momentous consequences' and can result in divestiture of title.); *Byrnes v. County of Saratoga*, 251 A.D.2d 795 (N.Y. App. Div. 1998) (A notice required by section 5-51.0 prior to the issuance of a Treasurer's Deed must apprise the property owner that a failure to act could culminate in divestiture of title.); *Blum v. Stone* (*In re Blum*), 127 A.D.2d 549 (N.Y. App. Div. 1987) (The notice procedures utilized must meet the requirements

of due process before an owner of property could be divested of title.).

The Court also finds persuasive an early decision by the United States Court of Appeals for the Second Circuit in *United States v. Certain Lands in Hempstead*, 129 F.2d 918 (2d Cir. 1942) ("*Hempstead*"). In *Hempstead*, the Nassau County Treasurer sold a tax lien for unpaid taxes assessed against property owned by the Kramers. The lien was purchased by Nassau County. The redemption period passed without action by the Kramers to redeem the tax lien and the County received a tax deed to the premises. Subsequently, the United States condemned the property and deposited compensation in relation to the condemnation. The County asserted ownership rights to the condemnation proceeds deposited by the United States because the Kramers never exercised their right of redemption. The Court of Appeals held that the County was entitled to the entire deposit.

In addition, in *Nassau County v. Dunn*, 11 N.Y.S. 2d 955 (Nassau County Ct. 1939), the redemption period allowed by the statute had passed and the County procured and recorded a deed to itself for the premises from the County Treasurer and thereupon instituted an action to procure an adjudication that by virtue of the tax sale and deed, the plaintiff, the County of Nassau, became the absolute owner of the premises in fee and that the prior owners had no right, title or interest therein. The court held that a purchaser at a tax sale acquires an equitable title which ripens into a legal title when the redemption period has expired and the County Treasurer's deed has been given. The court found that the County's initial deed did not transfer title because the record owner did not receive proper notice. However, it held that the County's subsequent tax deed issued after the record owner failed to redeem after it was given a chance to redeem pursuant to the improper notice vested title in the County and ended title of the record

owner. *Id*. at 958; *see People v. Maxfield*, 30 Cal. 2d 485 (Sup. Ct. Cal. 1947) (state acquired all the rights of ownership of a private owner, except the remaining taxpayers' right of redemption).

The Debtor relies on Judge Dunne's statements in the decision in the 208 Sea Cliff Litigation for the proposition that because the fee owner has a continuing right to redeem the property until a judgment is entered in the bar claims action it had and continues to have an ownership interest in the 216 Sea Cliff Property.  In the decision, Judge Dunne stated that the "Nassau legislature in enacting 5-57.1(d) has determined that the defaulting taxpayer should be afforded an opportunity to redeem his or her property up to and including the institution of an action.  From a due process standpoint such a provision represents nothing more than a fail safe precaution offering an owner one final opportunity to save his or her property by paying the amount owed."  Based on this language, the Debtor argues that res judicata mandates that this Court grant summary judgment to the Debtor that it is the owner of the 216 Sea Cliff Property.

Res judicata precludes parties from relitigating claims if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties, (4) involving the same claims. *Anaconda -Ericson v. Hessen (In re Teltronics Srvs., Inc.)*, 762 F.2d 185, 190 (2d Cir. 1985).  The principles of res judicata do not apply here because the action before Judge Dunne did  not involve the same claims.  Judge Dunne was not deciding the extent of the rights of a lien holder and that of the owner once a tax deed has been issued.  Instead, the issue in the 208 Sea Cliff Litigation was whether a complaint pursuant to Article 15 of RPAPL to extinguish claims to property must extend the right to redeem since a complaint brought pursuant to a "Code Action" would have to plead such a right.

Starting with the assumption that a valid Treasurer's Deed was issued, the Court finds that the Debtor is not entitled to judgment as a matter of law that Weisman's interest in the 216 Sea Cliff Property constitutes merely a lien against the Property.  To hold that after the issuance of a valid Treasurer's Deed, Weisman held only a lien against the property would render the NCAC provisions relating to a Treasurer's Deed superfluous.  The NCAC sets out the steps for acquiring and redeeming tax liens, *see* § 5-33.0 through 5-50.0, but it also provides for the added steps a lienholder must take to acquire a Treasurer's Deed and the attendant requirements and interests.  *See* § 5-51.0 (The holder of a tax lien which is not satisfied must provide the owner with notice that he intends to seek a deed of conveyance of the property (b.4), the validity of the tax deed is not affected by defective notice (g), the lienholder must apply for a deed within fifteen years (h)); § 5-52.0 (After title to premises has been conveyed to lienholder, he may obtain actual possession of the premises); § 5-53.0 (If a tax lien is not satisfied, the County Treasurer shall execute a conveyance to the lienholder); § 5-54.0 (Conveyance is presumptive evidence that required proceedings and notices were regular).

Moreover, Weisman's and Moret's interests in the real property based on Treasurer's Deed # 4751 and #4802 cannot constitute liens against the property because those liens have been surrendered.  Section 5-53.0 provides that a condition precedent to the execution of a conveyance is the surrender of the certificate of sale.  § 5-53.0.  Accordingly, once the Treasurer's Deed is issued, the lien no longer exists.

**For the foregoing reasons, the Court finds that as a matter of law summary judgment in favor of the Plaintiff shall be DENIED on that portion of the first cause of action which seeks a determination that Weisman holds merely a lien against the 216 Sea**

**Cliff Property, as well as the second cause of action which seeks a determination that the Debtor is the owner of the 216 Sea Cliff Property with all of the rights of ownership.**

> **2.      Whether the Debtor Has a Right to Redeem the 216 Sea Cliff Property and if so, Whether the Redemption Voids the Treasurer's Deed *Nunc Pro Tunc***

Although the parties disagree as to Weisman's status as an owner versus a lienholder of the 216 Sea Cliff Property after the issuance of the Treasurer's Deed, they do agree that as of the date of the bankruptcy filing the Debtor retained the right to redeem the property.  "Equity of redemption generally refers to the right of an entity which has granted or suffered a lien on its property to pay off the debt and recover or redeem the property."  5 *Colliers on Bankruptcy*, ¶ 541.05 (15th ed. rev. 2008)  Black's Law Dictionary defines right of redemption as "the right (granted by statute only) to free property from the encumbrance of a foreclosure or other judicial sale, or to recover the title passing thereby, by paying what is due, with interests, costs, etc." *Black's Law Dictionary* 1278 (7th ed. 1999).  "The right to redeem from a tax sale can be exercised only in the manner permitted by statute."  *Levy v. Newman*, 28 N.E. 660 (N.Y. 1891); *People v. Moynahan*, 133 N.Y.S. 361. (N.Y. App. Div. 1912); *accord United States v. Certain Lands in Hempstead*, 129 F.2d at 919.

The Debtor's right of redemption became the property of the estate when the Debtor filed bankruptcy.  Section 541 defines property of the estate as: "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.  "Unless a particular federal interest requires a different result, property interests are created and defined by state law."  *Butner v. United States*, 440 U.S. 48 (1979); *see In re Hurt*, 158 B.R. 154 (BAP 9th Cir.

1993) (An equity of redemption comes within the scope of "'all legal or equitable interests of the debtor in property" and as such, becomes property of the estate pursuant to section 541(a)(1).).

We must look to the NCAC to determine when and how the Debtor may redeem the property.  First, pursuant to the clear language of the NCAC, the owner's right to satisfy a tax lien is not continuous.  The NCAC provides that an owner can satisfy a tax lien up to the time a Treasurer's Deed has been issued and that once a Treasurer's Deed has been issued, the County Treasurer can no longer allow satisfactions of the tax lien.  *See* § 5-50(a), (b).  However, where a Treasurer's Deed has been issued and the holder of the deed commences a Code Action, the owner is then given one more chance to satisfy the lien.  *See* § 5-57.1(d).

Second, redemption does not necessarily restore ownership of the property to the initial record owner as of the date the Treasurer's Deed was issued.  The NCAC provides for two different instances in which an initial record owner can satisfy a lien once a Treasurer's Deed has been issued upon that lien.  The effect of the satisfaction is different in each of the two instances.

The first instance pursuant to which an owner has a right to satisfy a lien after a Treasurer's Deed has been issued arises where the holder of the Treasurer's Deed brings a Code Action to quiet title.  *See* § 5-57.1(d).  The NCAC provides that where a holder of a Treasurer's Deed brings a Code Action, the holder must extend the right to the owner to set aside the Treasurer's Deed and to satisfy the tax lien.  §5-57.1(d).  Section 5-57.1(d) provides that the owner can satisfy the tax lien on which the deed was based "by making a satisfaction pursuant to the terms of section 5-50.0 of the code as if no deed had been issued."  §5-57.1(d).  Section 5-50.0(a) sets out the terms on which an owner can satisfy a tax lien in a situation where a deed *has not* been issued.  The language in section 5-57.1(d) that "as if no deed had been issued" is an

acknowledgment that section 5-50.0 applies in a situation where there is no deed and clarifies that an owner satisfying a lien pursuant to his right in a Code Action is to use the steps in section 5-50.0 even though a deed has been issued.  The language in section 5-57.1(d), "as if no deed had been issued," does not dictate, nor does the remainder of section 5-57.1 state what the result of the satisfaction arising in relation to a Code Action is on the effectiveness of the deed.

There is a provision of the NCAC which permits a Treasurer's Deed to be set aside as if it had never been issued.  *See* § 5-51.0(g).  That section, however, only applies where the tax deed holder failed to properly notify the owner that a tax sale took place and that it was seeking a Treasurer's Deed.  § 5-51.0.  Section 5-51.0 entitled "Notice to owner by holder" provides in relevant part that if a notice to redeem is served after the time it should have properly been served, the owner can satisfy the tax lien upon the terms provided in section 5-50.0 as if the deed had not been issued. § 5-51.0(g).  Further on in that section, the NCAC provides that "every such satisfaction shall be as effectual as if made before the delivery of the treasurer's deed." §5-51.0(g).  Section 5-57.1 which pertains to the owner's right to satisfy the lien in relation to a Code Action omits this additional language pertaining to the retroactive effect of the satisfaction.

If the County Legislature wanted to give retroactive effect to a tax deed redemption where all procedural requirements of the NCAC were complied with, then it would have included the same additional language in section 5-57.1 as it did in section 5-51.0(g).  When language is included in one part of the statute and is excluded from another part of the same statute, it is presumed that the drafters acted purposely in the disparate inclusion or exclusion. *See Barnhart v. Sigmon Coal Co. Inc.*, 534 U.S. 438, 439-40 (2002).  Thus, there is a different

result on the retroactive effect of redemption of a tax deed when an owner satisfies a lien

because he never knew it existed rather than because he was tardy in his obligations.

**For the foregoing reasons, the Court finds that as a matter of law, summary judgment in favor of the Plaintiff shall be DENIED on that portion of the first cause of action which seeks a determination that the Debtor can redeem the 216 Sea Cliff Property from the Treasurer's Deeds *nunc pro tunc* as though the deeds had never been issued.**

### 3.    Whether the Rental Arrears and Current Rents from the 216 Sea Cliff Property are Property of the Estate

The Debtor contends that the rental arrears and current rent generated at the 216 Sea Cliff Property are property of the estate pursuant to 11 U.S.C. § 541(a).  The Debtor seeks to utilize these rents to fund its plan of reorganization.  Weisman argues that the Debtor cannot use the rents to fund a plan because they are not property of the estate.  Weisman asserts that he owns the 216 Sea Cliff Property from the date the Treasurer's Deed is issued until the time the Debtor satisfies the liens upon which the deeds have been issued and thus is entitled to the rents.

As the Court determined above, the Debtor has an interest in the 216 Sea Cliff Property, which interest is comprised of the right to redeem - the right to satisfy the lien upon which a Treasurer's Deed has been issued.  This right, however, does not extend to rents accrued on that property.

In *Nassau County v. Dunn*, the court held that *until the county acquired a deed which vested title* in the county, the position of the county was comparable to that of a mortgagee in possession.  The court explained that where a mortgagee takes possession and collects rents on leases, the owner would be entitled to recover net rents, the gross rents less the costs of taxes and

maintenance.  The court analogized that the record owner would be entitled to recover only the rents and profits and there could be no profits until all necessary taxes, repairs and maintenance charges had been deducted.  Accordingly, the court held that the lienholder to whom the taxes were owing had the right to apply the rents which it collected to the accrued taxes and the taxes falling due.

Here, the facts are inapposite, Weisman has acquired a tax deed.  The Debtor has asked this Court to assume for purposes of a decision on the Debtor's motion for summary judgment that a valid Treasurer's Deed was issued.  Where a holder of a tax lien acquires a Treasurer's Deed his position cannot be compared to that of a lienholder.  *See Collins v. Collins*, 148 Kan.569 (Kan. 1938).  "Rules of equity are applicable to the rights of mortgagees in possession but not to the rights of parties in relation to tax deeds because such rights are governed by statute."  *Id*.  There are a myriad of cases, albeit not from New York, finding that the holder of a valid tax deed is not only entitled to collect the rents and apply them toward the outstanding taxes but also to any amounts exceeding the necessary taxes.  *See People v. Maxfield*, 30 Cal. 2d 485 (Cal. 1947) (state entitled to rents and profits collected by former owners of lands that were conveyed to state for period between date of tax deed and date of redemption by owners); *Mayer v. Melancon*, 3 Pelt. 581 (La. Ct. App. 1920) (purchaser of property at tax sale is entitled to rents from date of registry of the tax deed and notice thereof to the lessee); *Gilliam v. Gohm*, 303 S.W.2d 101 (Mo. 1957) (where tax deed constituted a valid conveyance, no claim exists for rent by prior owner as to any rents accruing after the date of the deed).  *Cf Ritchie v. Will*, 61 Kan. 715 (Kan. 1900) (where tax deed adjudged invalid, holder of a tax deed liable to owner of legal title for rents accrued during pendency of quiet title action); *Milroy v. Feran*, 270 P.2d 329 (Okla

1954) (holder of a void tax deed not entitled to any rents from the land and must account for any rents received).

Based upon (1) the assumption that a valid Treasurer's Deed was issued, and (2) the Court's rulings earlier in this Memorandum Decision that (a) Weisman's interest in the 216 Sea Cliff Property is not merely a lien, (b) the Debtor is not the owner of the 216 Sea Cliff Property with the attendant rights of ownership, and (c) the Debtor's redemption of the property from a validly issued Treasurer's Deed would not void the deed *nunc pro tunc* to the date of issuance, this Court finds that the rents accrued and continuing to accrue on 216 Sea Cliff Property are not property of the estate.

**For the foregoing reasons, the Court finds that as a matter of law summary judgment in favor of the Plaintiff shall be DENIED on the third cause of action which seeks a declaratory judgment that the rental arrears and current rent are property of the estate pursuant to 11 U.S.C. § 541.**

### 4.    Whether the Debtor Can Fix, Determine, and Liquidate Moret's Claim

In the sixth cause of action of the Complaint, the Debtor contends that Moret filed an informal proof of claim when it filed an application in support of an order dismissing the Debtor's case.  The Debtor requests that the Court fix, determine, and liquidate Moret's secured claim so that it can determine any distribution which may be payable to Moret under a plan of reorganization.  The Debtor urges the Court to utilize the methodology in the NCAC to calculate the allowed redemption fee and argues that such an amount should be the amount of the allowed

secured claim of Moret.  The Debtor argues that pursuant to 11 U.S.C. 1123(a)(5)(E) it can make payments on Moret's liens through a plan of reorganization over time.

Moret, however, contends that Debtor may not redeem Treasurer's Deed #4802 because a Code Action has not been commenced with respect to that deed.  The Debtor asserts that it is inequitable for Moret to prevent redemption of the tax lien by refusing to commence a Code Action and that Moret is attempting to tie up valuable property.

New York law expressly permits counties to establish a deadline for redemption and to reject offers of payment after that date.  *See* N.Y. Real Prop. Tax Law § 1110(1) (limiting payment of tax lien to a period "on or before the expiration of the redemption period).  The owner of property upon which a tax lien has been sold may satisfy the lien at any time before the delivery of the County Treasurer's deed. § 5-50.0(a).  The County Treasurer shall continue to receive and allow satisfaction of the tax lien until the delivery of the County Treasurer's deed.  § 5-50.0(b).  The County Treasurer shall not thereafter allow satisfactions or receive payments therefore except on order of the court duly made in the action.  § 5-50.0(b).  As discussed above however, a record owner can satisfy the liens against the property despite the existence of a Treasurer's Deed only if the holder of the Treasurer's Deed failed to properly notify the record owner pursuant to section 5-51.0, or if the holder of the Treasurer's Deed commences a Code Action.

The Debtor can set aside Treasurer's Deed #4751 and satisfy the lien upon which the deed has been issued because Weisman commenced a Code Action based on that deed.  However, Moret, the holder of Treasurer's Deed #4802 has not commenced a Code Action based on Deed #4802 and the Debtor does not assert in his motion for summary judgment that he did

not receive proper notice.  Thus, as a matter of law, the Debtor is not entitled to an order fixing Moret's informal proof of claim which is based on Treasurer's Deed #4802 so that the Debtor can determine the amount required to redeem the property.

Parties to a bankruptcy proceeding have, however, relied on section 105(a) of the Bankruptcy Code as a means of enlisting the aid of judicial authority.  Section 105(a) is not without limits, a bankruptcy court's equitable powers must and can only be exercised within the confines of the Bankruptcy Code. *New England Dairies Inc. v. Dairy Man Convenience Stores Inc.* (*In re Dairy Mart Convenience Stores Inc*.) 351 F.3d 86, 92 (2d Cir. 2003) (citations omitted).  Section 5-50.0(b) of the NCAC gives the courts discretion to permit the County Treasurer to continue accepting payments to satisfy a lien.  *See* § 5-50.0(b).  Therefore, while it may not be beyond the Court's equitable power to permit the redemption of Deed #4802, the Debtor is not entitled to such a judgment as a matter of law.

In regard to the methodology for fixing the amount of the claim, section 5-57.1(d) provides in relevant part that the owner can satisfy the tax lien on which such deed was based by making a satisfaction pursuant to the terms of section 5-50.0.  Section 5-50.0(1) provides that the owner may satisfy the lien prior to service by paying: a) the sum for which the tax lien was purchased; b) subsequent taxes paid by the purchaser; c) interest and penalties on the amounts of the tax lien and the subsequent taxes.  To satisfy the tax lien after issue of notice of the tax sale, in addition to the above stated amounts, the owner must pay the sum of the actual costs of the title and tax search.  Section 5-50.0(2).  In addition, the owner shall pay such actual disbursements as in the judgment of the court shall be fairly attributable to such lots or parcels, the tax lien on which has been thus satisfied.  §5-57.1(d).

Weisman argues that the payment to satisfy a lien must be made in full and thus the payment cannot be spread throughout the plan.  However, the NCAC does not provide that the payment must be made in full.  Instead, section 5-50.0 setting forth when a tax lien may be discharged provides that the "County Treasurer shall continue to receive and allow satisfaction of the tax lien in the manner set forth in subdivision a of this section until delivery of the deed." The language that the Treasurer shall continue to receive payments until the issue of the deed suggests that the payments do not have to be made in full at once.  Moreover, section 1123(a)(5)(E) of the Bankruptcy Code provides that "notwithstanding any other applicable nonbankruptcy law, a plan shall (5) provide adequate means for the plan's implementation, such as (E) satisfaction or modification of any lien."

The Court finds that as a matter of law, the Debtor is not entitled to an order fixing, determining, and liquidating Moret's claim based on Treasurer's Deed #4802 so that the Debtor can determine the amount of the claim for redemption purposes.  Should the Court determine that the Debtor may set aside Deed #4802 at a later proceeding, the amount of such satisfaction will be determined at a subsequent hearing to take into consideration Weisman's affidavit setting forth that it bought liability insurance, paid subsequent real estate taxes, attempted to collect rents, and incurred legal expenses.

## V. CONCLUSION

As a matter of law, Debtor is not entitled to a judgment 1) that the issuance of Treasurer's Deeds #4802 and #4751 did not divest it of title to, and that it remains the owner of, 216 Sea

Cliff Property retaining all the rights of ownership, 2) that the interest of Weisman and Moret constitute a lien, 3) that the rents accrued on 216 Sea Cliff Property are property of the estate, or 4) fixing, determining, and liquidating Moret's claim based on Treasurer's Deed #4802.  Thus summary judgment as to Debtor's first, second, third, and sixth cause of action is denied.

In regard to Weisman's cross motion for summary judgment, the Court determines that Weisman is not entitled to judgment that it is the owner of the 216 Sea Cliff Property or that it is entitled to the rent accrued on 216 Sea Cliff Property because a genuine issue of fact exists as to Weisman's asserted position.

Dated: Central Islip, New York
     October 22, 2008            ***/s/ Robert E. Grossman***
                                        Robert E. Grossman
                                        United States Bankruptcy Judge